THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| E. JAMES SPAHR and COLLEEN SPAHR,<br><br>Plaintiffs,<br><br>vs.<br><br>FERBER RESORTS, LLC d/b/a RODEWAY INN,<br><br>Defendant, | **ORDER and<br>MEMORANDUM DECISION**<br><br><br>Case No. 2:08-cv-72-CW |

In this case, Plaintiffs E. James Spahr and Colleen Spahr have prevailed in a jury trial on their tort claims against Defendant Ferber Resorts, LLC. At this point, the judgment in favor of the Spahrs has been appealed and upheld, and the Tenth Circuit has issued a mandate to this court affirming the judgment. Now before the court are several motions that the parties brought after the mandate issued. The main motion to be resolved at this time is Ferber Resorts' Motion for Relief from Judgment and for New Trial under Rules 60 and 61 of the Federal Rules of Civil Procedure. The parties agree that the disposition of this motion will, as a practical matter, resolve the other post-mandate motions.

In support of the motion for relief from judgment and a new trial, Ferber Resorts asserts that the Spahrs did not disclose potentially damaging evidence about their testifying expert before trial began. Ferber Resorts contends that it is entitled a new trial based on the following:

1

1) fraud, misrepresentation, or misconduct by an opposing party under Rule 60(b)(3), 2) fraud on the court 3) equitable relief under Rule 60(b)(6), and 4) plain error affecting Ferber Resorts' substantial rights under Rule 61.

As further explained below, none of these contentions prevails. Accordingly, Ferber Resorts' motion for relief from judgment and a new trial is DENIED. The court will also rule upon the other outstanding motions below.

## BACKGROUND

In early October 2006, the Spahrs were guests of the Rodeway Inn & Suites in Springdale, Utah. On October 4, Mr. Spahr sustained severe injuries when he fell into a six foot deep culvert that ran through the hotel parking lot. Mr. Spahr's worst injuries were to his knee. The Spahrs filed this diversity action in January 2008. In their complaint against Ferber Resorts, the owner and operator of the hotel, Mr. Spahr claimed for negligence and Mrs. Spahr claimed for loss of consortium. Those two claims came before a jury in October 2009. On October 23, 2009, the jury found against Ferber Resorts on both counts and awarded Spahrs a total of $435,500. The court entered judgment on the award and Ferber Resorts appealed. The Tenth Circuit affirmed in an order dated March 23, 2011. On April 14, 2011, the Tenth Circuit issued its mandate to this court.

On April 18, 2011, Ferber Resorts filed the present motion for relief from judgment and for a new trial. The following circumstances are relevant to that motion. On October 24, 2008, a full year before trial, the Spahrs disclosed Dr. Steven R. Graboff as an expert witness to provide testimony regarding the nature and extent of Mr. Spahr's injuries, as well as Mr. Spahr's medical treatment and prognosis. In Dr. Graboff's expert report and curriculum vitae that the Spahrs

submitted in this case, Dr. Graboff identified himself as a "Fellow" of the American Academy of Orthopaedic Surgeons ("AAOS"). The AAOS is a professional organization of orthopaedic surgeons.

At trial in October 2009, the Spahrs' counsel questioned Dr. Graboff about his qualifications. Regarding his affiliation with specific organizations, counsel asked Dr. Graboff about his status as a member of the Southern California Athletic Commission, as a Qualified Medical Examiner appointed by California, and as being certified by the American Board of Orthopaedic Surgeons. Counsel did not ask Dr. Graboff about his membership in any other organization that Dr. Graboff had listed on his CV, such as the AAOS, the American Medical Association, the California Medical Association, the Orange County Medical Association, and the California Orthopaedic Association. No medical expert testified on behalf of Ferber Resorts at trial regarding Mr. Spahr's injuries.

Ferber Resorts states that in early March 2011, it learned for the first time that Dr. Graboff had been suspended from the AAOS in June 2009. According to materials obtained by Ferber Resorts, the AAOS suspended Dr. Graboff for "unprofessional conduct in the performance of expert testimony." (Dkt. No. 133-1 at p. 31.) As the court understands the nature of the facts underlying that suspension, Dr. Graboff had provided a plaintiff in another case with a report concluding that certain actions by another orthopaedic surgeon were negligent. That plaintiff had then used the report in negotiations with the surgeon to obtain a favorable settlement. The report, however, did not include all relevant facts, and Dr. Graboff admitted that if he had known all the facts, he would not have concluded that the other doctor was negligent. Dr. Graboff asserted, however, that he had marked the report as a draft, but that the plaintiff's

3

counsel had deleted that reference without Dr. Graboff's consent or knowledge. After a hearing before the AAOS in which these general facts were presented, the AAOS decided to suspend Dr. Graboff for two years. The Spahrs did not update their expert disclosure to include Dr. Graboff's suspension from the AAOS before or during trial.

Ferber Resorts contends that the Spahrs were aware of the suspension before and during trial. Ferber Resorts' primary asserted evidence for this proposition is that the Spahrs made no reference to the AAOS during their direct examination of Dr. Graboff. Ferber Resorts contends that the outcome of the trial would have been different if it had cross examined Dr. Graboff about his suspension from the AAOS.

## ANALYSIS

**I.     Rule 60(b)(3)**

The court will first address whether Ferber Resorts is entitled to relief under Rule 60(b)(3). Rule 60(b)(3) provides that a party may obtain relief from a final judgment due to "fraud . . ., misrepresentation, or misconduct by an opposing party." Fed. R. Civ. Pro. 60(b)(3). A one-year procedural bar applies to claims brought under Rule 60(b)(3). Fed. R. Civ. Pro. 60(c)(1). The statute of limitations period is "absolute" and is not tolled during the pendency of an appeal. *Tool Box, Inc. v. Ogden City Corp.*, 419 F.3d 1084, 1088 (10th Cir. 2005).

In this case, judgment was entered against Ferber Resorts on October 28, 2009. Ferber Resorts, however, filed its present motion on April 18, 2011, well over one year later. Ferber Resort's motion for relief under Rule 60(b)(3) is thus barred by the absolute one-year procedural bar of Rule 60(c)(1).

In any event, even if Rule 60(b)(3) relief were not time barred, Ferber Resorts' motion would not prevail on the merits. To obtain relief under Rule 60(b)(3), the moving party must set forth "clear and convincing proof of fraud, misrepresentation, or misconduct." *Cummings v. General Motors Corp.*, 365 F.3d 944, 955 (10th Cir. 2004) (*abrogated on other grounds by Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394 (2006). The moving party must also show that the opposing party had the "intent or a deliberate plan or scheme to interfere with the moving party's case." *Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281, 1292 (10th Cir. 2005). In addition, the "challenged behavior must *substantially* have interfered with the aggrieved party's ability fully and fairly to prepare for and proceed at trial." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (internal quotations omitted). The burden of establishing fraud is on the movant. *Wilkin v. Sunbeam Corp.*, 466 F.2d 714, 717 (10th Cir. 1972).

Here, Ferber Resorts has failed to present clear and convincing evidence that the Spahrs were aware of Dr. Graboff's suspension before and during trial. As mentioned, Ferber Resorts contends that because the Spahrs did not specifically ask Dr. Graboff about his affiliation with the AAOS on direct, they must have known about the suspension. Ferber Resorts argues that this seeming avoidance of addressing the AAOS should be enough to support an inference that the Spahrs knew about and covered up the suspension. But counsel also did not ask Dr. Graboff about several other organizations to which he stated that he belonged on his CV. In that context, the court could just as easily infer that the Spahrs' counsel simply honed in on the organizations that would seem most impressive to a jury. It is not clear that the AAOS would necessarily be such an organization. At the hearing on this motion, Ferber Resorts represented that it

5

understands the AAOS to be the equivalent of a certifying board. On the other hand, the Spahrs' counsel asserted that he understands the AAOS to be an advocacy organization. Given these circumstances, the fact that counsel did not ask Dr. Graboff about the AAOS is not clear and convincing evidence that the Spahrs knew about and were purposely concealing the suspension.

Also militating against a finding that the Spahrs knowingly concealed Dr. Graboff's suspension is that the deadline to update expert disclosures in this case was February 15, 2009, several months before Dr. Graboff was suspended. Moreover, the Spahrs had submitted Dr. Graboff's report and CV in October 2008, about nine months before the suspension and a full year before trial. In light of these facts, there is no reason to infer that the Spahrs necessarily asked Dr. Graboff about his standing in the AAOS before or during trial. It seems most likely that by June 2009, the Spahrs' counsel would not have been focused on possible updates to Dr. Graboff's qualifications, but was instead conferring with Dr. Graboff about the substance of his expert testimony. Which organizations from Dr. Graboff's CV to include in direct examination of him would have been a minor issue at that point. There is also no evidence suggesting that Dr. Graboff informed the Spahrs of his suspension before trial without being asked by them. Accordingly, the evidence only weakly supports an inference that the Spahrs knew of the suspension and purposely concealed it from Ferber Resorts.

Moreover, even if Spahrs had been aware of the suspension and concealed it, Ferber Resorts' ability to prepare for and proceed at trial was not substantially impacted by such concealment. This conclusion is supported by several reasons.

First, even if the Spahrs had updated their expert disclosure to reflect the suspension, the most Ferber Resorts could have done with evidence of the suspension would have been to

6

impeach Dr. Graboff's credibility. This is because the suspension did not go to the substance of Dr. Graboff's testimony at trial. Moreover, Ferber Resorts did not present its own medical expert regarding Mr. Spahr's injuries to offer a different point of view. And it is not clear that Ferber Resorts could have been able to retain such an expert if it had known of the suspension. By June 2009, the time to designate additional experts (along with expert discovery) had long passed. Without a medical expert of its own, Ferber Resorts had no alternative damages testimony on which the jury could have relied if it had decided that Dr. Graboff's credibility was impeached.

Second, it is not clear that the incident for which the AAOS suspended Dr. Graboff was close enough in character to his testimony in trial that the suspension would been effective in impeaching him. Even if Ferber Resorts had cross examined Dr. Graboff about the suspension, the Spahrs would have had colorable arguments that the circumstances leading to the suspension were not relevant to Dr. Graboff's credibility in this case.

Third, counsel did not ask Dr. Graboff about his fellowship with the AAOS on direct. As such, the jury did not use Dr. Graboff's fellowship in the AAOS as a fact that bolstered his credibility. In the hypothetical case in which the Spahrs disclosed the suspension to Ferber Resorts before trial, it seems likely that the Spahrs would have anticipated the impeachment of Dr. Graboff on their direct of him and at closing, painting the suspension as merely an advocacy organization looking out for one of its own.

Fourth, having presided over the trial, the court is aware that Ferber Resorts' main defense strategy was to prove comparative negligence by Mr. Spahr and avoid any judgment at all. Ferber Resorts was not focused on contesting the amount of damages, and did not put on a

7

medical expert to contest Dr. Graboff's testimony. In fact, Ferber Resorts did not depose Dr. Graboff.

Finally, and most persuasively, before and during trial, there was copious evidence that Mr. Spahr was gravely injured. Had it appeared that Dr. Graboff was purposely inflating the extent and nature of Mr. Spahr's injury and damages, impeachment evidence may have led a jury to discount his testimony entirely or to contrive a way of reducing the award. But Dr. Graboff's testimony about Mr. Spahr's injuries did not appear to the court to be particularly exaggerated or unworthy of belief. In fact, Dr. Graboff's testimony was consistent with other trial evidence, such testimony by the Spahrs and the Springdale Department of Public Safety's "Incident Report," as well as medical records from Coral Desert Orthopaedics, Great Lakes Home Health, Jackson Orthopaedic Care and Surgery, Dixie Regional Medical Center, Saint George Radiology, and Summit Physical Therapy. Given all this evidence, the chances are not substantial that the jury's award would have changed even if the jury had been made aware of Dr. Graboff's suspension.

On a final note, it seems more likely than not that the Spahrs' counsel simply did not know about Dr. Graboff's suspension before or during trial. If this is the case, the Spahrs did not necessarily violate Rule 26 of the Federal Rules of Civil Procedure, which requires parties to supplement expert disclosures "*if* the party learns that in some material respect the disclosure or response is incomplete . . ." Fed. R. Civ. P. 26(e)(1)(A) (emphasis added). One could argue that counsel here should have learned about Dr. Graboff's suspension, but Rule 26 does not on its face necessarily require counsel to check in with an expert to ensure that there have been no changes to the CV, especially after the cut off for updating expert disclosures has past.

Considering each of these points, the court concludes that Ferber Resorts was not substantially harmed in its trial preparation and presentation by not knowing about Dr. Graboff's suspension from the AAOS.

## II. Rule 60(b)(6)

Ferber Resorts also contends that it is entitled relief under Rule 60(b)(6), which allows relief from judgment for "any other reason that justifies relief." This relief is not governed by the one year limit. Generally, "relief under Rule 60(b)(6) . . . requires a showing of 'extraordinary circumstances.'" *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005).

In support of its argument under Rule 60(b)(6), Ferber Resorts relies on *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 248 (1944), in which the Court granted relief from a judgment obtained through an on-going fraud upon the Third Circuit that had begun nine years earlier. Courts, however, have limited the application of *Hazel-Atlas* exclusively to claims of fraud upon the court. To extend the doctrine to cover other circumstances would "render meaningless the one-year limitation on motions under F.R.Civ.P. 60(b)(3)." *Kupferman v. Consol. Research & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972). As discussed further below, however, there was no fraud upon the court here.

Setting aside *Hazel-Atlas*, Ferber Resorts has not shown that this case presents any extraordinary circumstances. As already mentioned, Ferber Resorts has not come forward with clear and convincing evidence that the Spahrs knew about Dr. Graboff's suspension and purposely hid it from Ferber Resorts and the court. Also as discussed above, Ferber Resort' ability to prepare for and proceed with trial was not clearly effected to any significant degree. In light of these considerations, Ferber Resorts' argument that this case is extraordinary fails.

In light of this ruling, the Spahrs' motion to strike Ferber Resorts' arguments under Rule 60(b)(6) is moot.

## III. Fraud On the Court

In addition to relief under Rule 60(b), Ferber Resorts moves to invoke "the inherent power of a court to set aside its judgment if procured by fraud upon the court." *United States v. Buck*, 281 F.3d 1336, 1341 (10th Cir. 2002). There is no time limit for a motion invoke this power. *Id.* at 1341-42. For the reasons below, Ferber Resorts' motion based on fraud upon the court fails.

Fraud upon the court is "fraud which is directed at the judicial machinery itself . . . It has been held that allegations of nondisclosure in pretrial discovery will not support an action for fraud on the court. It is thus fraud . . . where the impartial functions of the court have been directly corrupted." *Id.* at 1342 (quoting *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985)). To establish a claim for fraud upon the court, the moving party must show that the opposing party acted deliberately, with "an intent to deceive or defraud the court." *Buck*, 281 F.3d at 1342 (quoting *Robinson v. Audi Aktiengesellschaft*, 56 F.3d 1259, 1267 (10th Cir. 1995)). Fraud on the court must be established by "clear and convincing evidence." *Buck*, 281 F.3d at 1342. Generally, "only the most egregious misconduct, such as bribery of a judge or members of a jury . . . will constitute a fraud on the court." *Id.* The burden of establishing fraud is on the movant. *See Wilkin v. Sunbeam Corp.*, 466 F.2d 714, 717 (10th Cir. 1972).

Ferber Resorts contends that the Spahrs committed fraud upon the court by purposely failing to disclose Dr. Graboff's suspension. Ferber Resorts relies on the same facts in support of this contention that it did in support of its contention of fraud on the party. As discussed

10

above, Ferber Resorts has not presented clear and convincing evidence that the Spahrs knew that Dr. Graboff had been suspended from the AAOS before or during trial. This conclusion alone merits denial of the request for relief.

In any event, even assuming that the Spahrs acted fraudulently in this case, Ferber Resorts' contention of fraud on the court fails. As explained by the Tenth Circuit, fraud on the court is *not* " fraud between the parties or fraudulent documents, false statements or perjury." *Bulloch*, 763 F.2d at 1121. Here, if the Spahrs purposely concealed a material fact during trial by not asking Dr. Graboff about the status of his fellowship with the AAOS, this concealment amounted to false testimony by omission. As defined by *Bulloch*, however, such testimony is not fraud on the court.

## IV.     Plain Error

Ferber Resorts' final asserted ground for relief from judgment based on Rule 61. Rule 61 provides that:

> Unless justice requires otherwise, no error in admitting or excluding evidence – or any other error by the court or a party – is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.

Fed. R. Civ. Pro. 61

Ferber Resorts contends that courts have an implicit power under Rule 61 to correct plain errors that affect substantial rights. Ferber Resorts asserts that it is entitled to relief due to plain error. This argument fails.

First, it is not clear that plain error applies here. The authorities Ferber Resorts relies on to argue that a district court may grant relief based on a party's plain error do not establish this

11

proposition. Rather, those cases discuss the standard by which an appellate court reviews errors committed by the district court.

Second, even assuming that the court has such a power, Ferber Resorts' motion fails on the merits. To gain relief from judgment based on plain error, Ferber Resorts must prove that the error affected "substantial rights" and "constitut[ed] a miscarriage of justice." *United States v. Goode*, 483 F.3d 676, 681 (10th Cir. 2007). For the reasons discussed above, Ferber Resorts has not shown that the alleged fraudulent concealment affected its substantial rights. Further, there was no miscarriage of justice here.

## V.     Other Motions

### A.     Ferber Resorts' Motion for a Stay of Judgment

At the hearing on this motion, the court explained that it would grant a stay on the execution of judgment until it issued a ruling on the motion for relief from judgment and a new trial. Now that this Order has disposed of that issue, Ferber Resorts' motion to stay is DENIED.

### B.     Ferber Resorts' Motion for Order to Show Cause

In this motion, Ferber Resorts asks that the court order the Spahrs to show why they should not be held in contempt for attempting to execute on the judgment bond by directly contacting the bond issuer before the Tenth Circuit's mandate issue. The court declines to issue this order, since payment was not issued on the bond as a result of the Spahr's actions, and at this point, the proper timing and procedure for collecting on the bond is clear to the Spahrs. Accordingly, the motion for an order to show cause is DENIED.

## C. The Spahr's Motion to Enforce Judgment Against the Bond

The Spahrs have moved for the court to issue an order under Rule 65.1 of the Rules of Civil Procedure directing Travelers Casualty and Surety Company of America to pay the Spahrs on the supersedeas bond. That motion is GRANTED. On or before August 22, 2011, the Spahrs are directed to calculate the exact amount they are owed on the judgment as of that date. The court will then issue a separate Order to Travelers to be sent to Travelers by the Clerk directing payment under the supersedeas bond in that amount.

## D. The Spahr's Motion for Attorney's Fees

The Spahrs have moved for attorney's fees, contending that Ferber Resorts' post-mandate motions were frivolous. While Ferber Resorts' motions were not successful, the court cannot agree that they were vexatious and unreasonable under Tenth Circuit precedent applying 28 U.S.C. § 1927. The Spahrs' motion for attorney's fees is therefore DENIED.

## CONCLUSION AND ORDER

For the foregoing reasons, the court ORDERS as follows:

Ferber Resorts' motion for relief from judgment and for a new trial (Dkt. No. 132) is DENIED;

Ferber Resorts' motion to stay judgment (Dkt. No. 134) is DENIED;

Ferber Resorts' motion for order to show cause (Dkt. No. 139) is DENIED;

the Spahr's motion to enforce the judgment against the supersedeas bond (Dkt. No. 141) is GRANTED;

the Spahr's motion for attorney's fees (Dkt. No. 143) is DENIED; and

the Spahrs' motion to strike (Dkt. No. 159) is MOOT.

SO ORDERED this 17th day of August, 2011.

                           BY THE COURT:

                           _____
                           Clark Waddoups
                           United States District Judge